**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



**CARPEAH NYENEKOR,**

                                    Petitioner,

            - *against* -

**THE STATE OF NEW YORK, et al.**

                                    Respondent(s).

**09 Civ. 8719 (DAB) (LMS)**

**REPORT AND**
**RECOMMENDATION**



**TO:   THE HONORABLE DEBORAH A. BATTS,**
         **UNITED STATES DISTRICT JUDGE**

## I.      INTRODUCTION

Carpeah Nyenekor (hereinafter "Petitioner") seeks, by his pro se petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging (1) his pre-trial commitments to the New York State Office of Mental Health (hereinafter "OMH"), which resulted from findings that he lacked capacity to stand trial, as well as (2) his October 29, 2009, convictions and sentences entered in New York State County Court, Orange County (Berry, J.). See Docket Entry #4, Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner pleaded guilty to a number of narcotics and weapons charges in satisfaction of three criminal indictments.  The County Court judge sentenced petitioner to determinate, concurrent terms of three and one-half years imprisonment as well as three years post-release supervision. The issues presented are whether (1) petitioner, prior to trial, was improperly committed to the custody of OMH as a legally incompetent criminal defendant; (2) petitioner voluntarily entered into the plea agreement; and (3) the County Court judge improperly sentenced petitioner. See id. at 4-8.  Petitioner's claims are moot or procedurally defaulted; thus, I respectfully recommend that the application for a writ of habeas corpus be denied and the petition be dismissed.

## II.   **FACTS AND PROCEDURAL HISTORY**

Petitioner, a Liberian-born man, was charged, in three separate indictments, with multiple state felony drug counts and one weapons count in County Court for the County of Orange, State of New York.  The charges stemmed from his (1) September 2006 arrest in Newburgh, NY, for the possession of illegal narcotics; (2) December 2006 arrest in Newburgh, NY, for the possession of illegal narcotics and a firearm; and (3) January 2007 arrest for the possession of illegal narcotics.

In February, 2007, a grand jury indicted petitioner on one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)) and one count of criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law § 220.09(1)) in relation to his January 2007 arrest.  Docket Entry #21, Attach. 2, Exh. 1, Indictment.  In March, 2007, a grand jury returned a separate indictment, charging petitioner with one count of criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law § 220.09(1)) based upon his September 2006 arrest.  Docket Entry #21, Attach. 2, Exh. 3, Indictment.  In April, 2007, a grand jury separately indicted petitioner on one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)) and one count of criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03), stemming from his December 2006 arrest.  Docket Entry #21, Attach. 2, Exh. 8, Indictment.  County Court, Orange County (Berry, J.), arraigned petitioner on all three indictments, and he pleaded not guilty to the counts.  Upon the State's motion, and over petitioner's objection, the County Court judge consolidated the cases stemming from the February 2007 indictment and the April 2007 indictment pursuant to New York Criminal Procedure Law (hereinafter "C.P.L.") § 200.20(2)(c). Docket Entry #21, Attach. 2, Exh. 16, Decision and Order.

The State thereafter superseded the February 2007 indictment, charging petitioner with one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)) and one count of criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06(5)).  Docket Entry #21, Attach. 3, Exh. 20, Indictment.

Thereafter, the County Court judge, upon a request by petitioner's counsel, ordered petitioner to undergo a psychiatric examination, pursuant to C.P.L. § 730.30, to determine whether he had sufficient mental capacity to stand trial.[1]  Supplemental Exh. 21, Order for Psychiatric Examination.  Following the examination, the Department of Mental Health – Orange County Community Mental Health Center filed an examination report with the court, opining that petitioner lacked legally competency to stand trial.  Supplemental Exh. 27, Examination Report.  On November 28, 2007, the County Court judge found petitioner to lack legal competency to stand trial, adjudicated him an incapacitated person, and committed him to the custody of OMH for treatment for a period not to exceed one year.  Supplemental Exh. 28-

---

[1] Due process prohibits the conviction of a legally incompetent individual.  Pate v. Robinson, 383 U.S. 375, 378 (1966).  To be deemed legally competent to stand trial, a criminal defendant must have (1) "sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding" and (2) "a rational as well as factual understanding of the proceedings against him [or her]."  Dusky v. United States, 362 U.S. 402, 402 (1960).  Due process requires that a judge, upon learning of a reason to question a defendant's competency, afford the defendant an adequate hearing on the issue of his or her competency to stand trial.  Pate, 383 U.S. at 387.

New York's procedural framework for assessing a criminal defendant's mental capacity to stand trial is set forth in C.P.L. § 730.10 et seq.  A court "must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."  C.P.L. § 730.30(1).  Upon the issuance of such an order, a qualified psychiatrist or psychologist evaluates the defendant and submits his or her findings to the court and parties.  C.P.L. §§ 730.20(1), (5).  In some circumstances, the court may hold a hearing on the issue.  C.P.L. § 730.20(2).  Where the court determines "that the defendant is an incapacitated person, . . . such court must issue a final or temporary order of observation committing him or her to the custody of the commissioner for care and treatment in an appropriate institution . . . "  C.P.L. § 730.40(1)

30, Orders of Commitment.  Upon such commitment, OMH housed petitioner at the Mid-

Hudson Forensic Psychiatric Center (hereinafter "the MHFPC").

On December 31, 2007, the MHFPC issued a notification of fitness to proceed, stating

that petitioner's capacity had been restored, and, consequently, he was competent to stand trial.

The County Court judge accordingly restored the matters to the trial calendar.  However, in

February 2008, again upon the request of petitioner's counsel, the County Court judge ordered a

second competency evaluation of petitioner and placed him back in the custody of OMH.

Supplemental Exh. 33-35, Order for Psychiatric Examination.  In April 2008, the County Court

judge again adjudicated petitioner incompetent to stand trial and issued new orders of

commitment.  Supplemental Exhs. 37-39, Orders of Commitment.

While housed at the MHFPC, petitioner, proceeding pro se, launched a number of attacks

on his confinement.  In March 2008, he sought a state writ of habeas corpus in the Second

Department of the New York Supreme Court Appellate Division, alleging that the County Court

judge had essentially sentenced him to a term of imprisonment without conviction.  Docket

Entry #21, Attach. 4, Exh. 41, Pet. for Writ of Habeas Corpus.  Petitioner also claimed that the

State prevented him from testifying in any of the grand jury proceedings.  The Appellate

Division, insofar as is relevant, denied the application for a writ of habeas corpus and dismissed

the petition.  People ex rel. Nyenkor v. County Court, Orange County, 2008 N.Y. Slip Op.

73079(U) (2d Dept. 2008).

In May 2008, petitioner, again proceeding pro se, commenced two state habeas corpus

proceedings in the Second Department of the New York Supreme Court Appellate Division,

again challenging his "unconstitutional and forceful confinement to" MHFPC in violation of his

state statutory right to a speedy trial.  Docket Entry #21, Attach. 6, Exh. 49, Petitions for Writs

of Habeas Corpus.  Petitioner filled the applications with nonsensical and conclusory allegations,

such as:

> The people failure to prosecute the petitioner in a 16, 17, and 18 months old case
> wherein they've lost their jurisdiction.  When plaintiff move for Recussal [sic] and
> change of venue to the Supreme Court of New York from the County Court.
> Petitioner was illegally confined to [MHFPC] without a single metal [sic]
> impairement [sic] for exercise his right to be release pursuant to CPL 180.80, 190.80,
> CPL 190.50, and CPL 30.30, 210.20.  IN retaliation for his defense The trial Judge
> wrote out a sentiment and plea with 2 racist psychologist to endorse his opinion to
> have plaintiff committed under a Fraudulent act . . . when Petitioner is Competent
> . . .
>
> No black man should be denied his mandated right to be Fraudulently harass, abuse,
> by a racist-impartial Judge because the petitioner challenge a Constitutionally
> mandated right protected by Law.

Id.  The Appellate Division, insofar as is relevant, denied the applications and dismissed the

petitions.  Docket Entry #21, Attach. 6, Exh. 52, August 25, 2008, Dec & Order on Mot; Docket

Entry #21, Attach. 6, Exh. 57, September 30, 2008, Mot. Dec.

Petitioner appealed as of right to the New York State Court of Appeals from the

Appellate Division orders dismissing his habeas petitions.  The New York State Court of

Appeals dismissed the appeals on the ground that they did not lie, because no substantial

constitutional question was directly involved.  People ex rel. Nyenekor v Dubois, 11 NY3d 893

(2008); People ex rel. Nyenekor v Healy, 11 NY3d 893 (2008).  When petitioner later moved in

the New York State Court of Appeals for leave to appeal from the Appellate Division orders, the

Court of Appeals denied the motions.  People ex rel. Nyenekor v. Dubois, 12 NY3d 703 (2009);

People ex rel. Nyenekor v Healy, 12 NY3d 703 (2009).

On June 10, 2008, MHFPC issued a notice of fitness to proceed, indicating that

petitioner's capacity had been restored.  Supplemental Exh. 48, Notification of Fitness to

Proceed.  Accordingly, petitioner's cases were restored to the trial calendar.  On July 23, 2008, at

the request of petitioner's counsel and the State, the County Court judge held another hearing on petitioner's competency to stand trial. On September 9, 2008, the County Court judge found that petitioner "is and remains an incapacitated person, as a result of his severe delusions and anti-social personality disorder," adding that it was "clear that [petitioner] [was] unable to assist in his defense." Supplemental Exh. 54, Dec. & Order. The judge again committed petitioner to the custody of OMH.

In January 2009, petitioner filed the instant petition for a writ of habeas corpus, seeking, among other things, to challenge his detention at the MHFPC. Docket Entry #2, Petition. The petition set forth sixteen grounds upon which petitioner sought relief, including that the State imposed a "[d]eath sentence . . . without trial in violation of the 6th, 8th and 14th Amends, U.S.C." Docket Entry #2, Petition at 4. He thereafter filed two additional § 2254 petitions. See 09 Civ. 8720; 09 Civ. 8721.[2]

On March 20, 2009, MHFPC notified the County Court judge that petitioner remained incapacitated and applied for a further order of retention. Supplemental Exh. 67, Application for Order of Retention. Supreme Court, Orange County (De Rosa, J.), subsequently issued an order permitting MHFPC to administer certain medications to petitioner over his objection. Supplemental Exh. 72, Final Order. On September 18, 2009, MHFPC notified the County Court that petitioner was mentally fit to proceed to trial. Supplemental Exh. 74, Notification of Fitness to Proceed. Accordingly, the County Court restored his cases to the criminal calendar, and he was transferred to the Orange County Jail.

---

[2] One of the submissions took the form of a 42 U.S.C. § 1983 complaint. Because it contained challenges to petitioner's detention resembling those in his § 2254 petitions, the District Court treated it as a § 2254 petition.

By order dated October 15, 2009, the United States District Court for the Southern District of New York (Preska, C.J.) consolidated petitioner's three federal habeas proceedings. Docket Entry #3.  Noting the lack of clarity as to "petitioner's specific constitutional challenges to his incarceration" and as to "whether he has fully exhausted all available state court remedies," the court directed him to file one amended petition concerning all three proceedings. Id. at 4.  The court gave a detailed description of the exhaustion requirements of 28 U.S.C. § 2254 and directed petitioner to "provide as much detail as possible about the pleadings he has filed in the state courts, including what documents he filed, where he filed them, the grounds raised therein, and how they were adjudicated by the state courts." Id. at 4.  The court explained that, "[i]f petitioner has not exhausted his state court remedies and is alleging the existence of extraordinary circumstances that would warrant this Court's intervention, he must explain the basis for such a claim." Id. at 4-5.

On October 29, 2009, petitioner, while represented by counsel, pleaded guilty in both of the cases pending in state court.  In satisfaction of the three indictments, petitioner entered guilty pleas to one count of attempted criminal possession of a controlled substance in the third degree, attempted criminal possession of a weapon in the third degree, and criminal possession of a controlled substance in the fourth degree.  He waived his right to appeal in both cases.  Docket Entry #21, Attach. 3, Exhs. 76-78, Waivers of Right to Appeal.

Petitioner amended his federal habeas petition in compliance with the order issued by Chief Judge Preska.  Docket Entry #4, Amended Petition.  In addition to reasserting challenges to his confinement at the MHFPC, the amended petition raised a number of new claims, including contentions as to the validity of his guilty pleas and the imposed sentences.

7

On December 2, 2009, the County Court judge sentenced petitioner as a second felony offender to concurrent definite terms of three and one-half years imprisonment, as well as three years postrelease supervision. The prison term was imposed as time served. Subsequent to the pleas, petitioner apparently filed timely notices of appeal from the judgments of conviction. Docket Entry #41, Respondent's Affirm in Opp. to Petition at 9. He did not, however, perfect such appeals.

In April 2010, petitioner moved in County Court, pursuant to C.P.L. § 440.10 and § 440.20, to vacate the judgment and sentences. Docket Entry #21, Exh. 79, Not. of Mot. to Vacate Sentence and Judgment. Petitioner alleged that the County Court judge sentenced him to three years post-release supervision, "in direct violation of the [p]lea agreement between [petitioner] and the [State] which require[d] [petitioner] to [only] plea guilty in exchange for three years sentence of time serve[d]." Id. He also argued that the State produced no evidence of his guilt at trial. Petitioner additionally contended that his attorney failed to inform him of the immigration consequences of his plea. Affid. In Supp. Of Mot to Vacate Judgment. Petitioner claimed that he suffered immigration consequences as a result of the plea, and, therefore, his attorney's failure to inform him of the potential of such consequences amounted to the ineffective assistance of counsel.

On July 12, 2010, the County Court judge denied the motion on the basis that petitioner "failed to provide the Court with the transcript of his plea allocution to support his conclusory claim that he was not advised that his sentence would include a term of post-release supervision." Docket Entry #21, Attach. 8, Exh. 81, Dec. and Order. Petitioner appealed as of right from the County Court's decision and order denying his motion to vacate his plea and sentence. The Second Department of the New York Supreme Court Appellate Division,

however, dismissed petitioner's appeal from such order on the basis that it was not "appealable as of right and leave to appeal ha[d] not been granted." Docket Entry #21, Attach. 8, Exh. 84, Dec & Order of Mot (citing C.P.L. §§ 450.10 and 450.15). Petitioner did not move for leave to appeal to the Appellate Division from the County Court decision and order denying his motion to vacate his plea and sentence. On November 13, 2011, petitioner was released on parole.

## III.   DISCUSSION

By way of his amended petition, petitioner asserts thirteen grounds upon which he seeks relief. His claims generally concern (1) the County Court judge's orders finding him incompetent to stand trial and committing him to the care and custody of OMH, (2) the grand jury proceedings, (3) the voluntariness of his pleas, and (4) his sentences. The undersigned agrees with the State that petitioner's claims are moot or procedurally defaulted, and, therefore, I recommend that they must be dismissed.

### A.   The Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), 28 U.S.C. § 2254.

Under AEDPA, a state prisoner must exhaust all state remedies before a federal court may consider his or her petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971). Exhaustion is required because, in the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501

9

U.S. 722, 731 (1991); see also Daye v. Attorney Gen. of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether a claim has been sufficiently exhausted.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim

may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in similar factual situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. See Klein, 667 F.2d at 282. Otherwise, the claim cannot be considered exhausted. Id. A petitioner who fails to exhaust state remedies by pursuing a direct appeal may however satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See id.; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to C.P.L. § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Klein, 667 F.2d at 282-83.

After a petitioner has met the threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if such custody was the result of a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a state court

11

has decided a claim on the merits, the federal court must apply AEDPA's deferential standard of

review.  See Torres v. Berbary, 340 F.3d 63, 67-68 (2d Cir. 2003).  Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if [it] arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law."  Williams v.

Taylor, 529 U.S. 362, 412-13 (2000).  An "unreasonable application" of Supreme Court

precedent is one that "identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., at 413.

While "it is clear that the question is whether the state court's application of clearly established

federal law was objectively unreasonable, the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is less clear."  Torres, 340 F.3d at 68-69

(internal quotation marks and citations omitted); see Williams, 529 U.S. at 409.  "[A]n

unreasonable application of federal law is different from an incorrect application of federal law."

Id., at 410.  Therefore, to establish the objective unreasonableness of a holding, a petitioner

"must identify some increment of incorrectness beyond error."  Torres, 340 F.3d at 68-69

(internal quotation marks and citations omitted).  When evaluating whether a decision is "based

on an unreasonable determination of the facts in light of the evidence", 28 U.S.C. § 2254(d)(1),

the factual findings of state courts are presumed to be correct.  Nelson v. Walker, 121 F.3d 828,

833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. For instance, federal habeas review of a federal claim is unavailable where "a state court declined to [address such claim] because the prisoner had failed to meet a state procedural requirement." Id. at 730. Such procedural bar provided the state "independent and adequate state grounds" to dismiss the petitioner's claim, and federal courts are ever mindful of the notions of "comity and federalism." Harris v. Reed, 489 U.S. 255, 260 (1989); Coleman, 501 U.S. at 730. Restated, "an adequate and independent finding of a procedural default will bar federal habeas review of the federal claim." Harris, 489 U.S. at 262.

A petitioner can overcome a procedural default through a showing of cause for the default and prejudice resulting therefrom. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); see Coleman, 501 U.S. at 748-50. For instance, a petitioner may establish cause through a showing of "lack of counsel, incapacity, or some interference by officials." Id. at 744. Additionally, "[a] habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he [or she] is actually innocent of the crime for which he [or she] has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see Schlup v. Delo, 513 U.S. 298, 321 (1995).

### B.    Petitioner's Challenge to the Competency Determinations

During the pendency of petitioner's criminal cases, he spent significant periods of time committed to the custody of OMH and confined at the MHFPC based upon determinations by

13

the County Court judge that he lacked the legal competency to stand trial.  Petitioner asserts that

he has never lacked mental capacity and now hopes to challenge the numerous New York state

court orders (1) adjudicating him a legally incompetent individual, (2) committing him to the

custody of OMH, and (3) permitting OMH to administer psychiatric medication over his

objection.  He asserts that the New York state courts did not afford him sufficient due process to

challenge or appeal such determinations, thereby violating his rights under the sixth, eighth, and

fourteenth amendments to the United States Constitution.  See Docket Entry #4, Amended

Petition at 4.  He also claims that the psychological evaluations were conducted in an arbitrary

and racially discriminatory manner.  Id. at 6.  The State correctly counters that, because

petitioner has been released from the MHPFC, the claim no longer presents an Article III case or

controversy, and, therefore, the issues are moot.  Docket Entry #21, Attach. 1, Respondent's

Mem. of Law at 3.

An individual's "civil commitment for any purpose constitutes a significant deprivation

of liberty that requires due process protection."  Addington v. Texas, 441 U.S. 418, 425 (1979).

A federal petition for a writ of habeas corpus, following the exhaustion of all available state

remedies, is the proper vehicle by which an individual can challenge his or her involuntary

commitment or retention in a mental institution.  Buthy v. Commissioner of Office of Mental

Health of New York State, 818 F.2d 1046, 1051 (2d Cir. 1987).

Article III, § 2 of the United States Constitution limits federal courts to adjudicating only

ongoing cases or controversies – a requirement that "subsists through all stages of federal

judicial proceedings, trial and appellate."  Lewis v. Continental Bank Corp., 494 U.S. 472, 477

(1990).  Therefore, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered,

or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a

14

favorable judicial decision." Id. at 477; United States v. Mercurris, 192 F.3d 290, 293 (2d Cir. 1999). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.' " Blackwelder v. Safnauer, 866 F.2d 548, 551 (2d Cir. 1989) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

Petitioner is no longer subject to any of the orders that he seeks to challenge because he has been released from the custody of OMH. Further, the County Court judge cannot place petitioner back in the custody of OMH pursuant to C.P.L. § 730.40 in these cases because petitioner has pleaded guilty and was sentenced. Because this Court cannot now release petitioner from such custody, there is no "actual injury which is likely to be redressed by a favorable judicial decision," Mercurris, 192 F.3d at 293, sufficient to satisfy Article III, and, thus, the issue is moot. See Hunter v. Gipson, 534 F.Supp.2d 395, 399 (W.D.N.Y. 2008) (petitioner's federal habeas challenge to a state court order confining him for competency evaluation in the context of a state criminal prosecution is mooted by his release from such confinement and the termination of the state criminal proceeding).

In addition, because petitioner pleaded guilty in both criminal cases, he cannot now challenge the competency determinations and related orders which came prior to the plea. United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He [or she] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he [or she] received from counsel was not within [acceptable] standards.' " (quoting Tollett v. Henderson, 411 U.S. 258, 267(1973) [alteration in original])). In sum, because petitioner's arguments are moot, the Court

cannot now address their merits, and, accordingly, I respectfully recommend that the claims be dismissed.

### C.    Petitioner's Challenges to his Pleas and Sentences

Petitioner also raises an array of other claims concerning the pre-trial proceedings, the voluntariness of his guilty pleas, and the sentences imposed.  Insofar as petitioner raises arguments concerning events preceding his guilty pleas, he contends that (1) the State improperly prevented him from testifying in or presenting evidence in any of the grand jury proceedings, (2) the grand juries were not drawn from a fair cross section of the community, (3) the State violated his right to a speedy trial under the United States Constitution and C.P.L. § 30.30, (4) the State brought the underlying prosecutions beyond the statute of limitations, and (5) the County Court judge improperly deprived him of his right to proceed pro se.  See Docket Entry #4, Amended Petition at 4-8.  Such claims are barred from federal habeas review by petitioner's guilty pleas.

In the context of a conviction reached by guilty plea, "[t]he focus of a federal habeas inquiry is in the nature of the advice [of counsel] and the voluntariness of the plea, not the existence of a antecedent constitutional infirmity." Tollett, 411 U.S. at 266; accord Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991).  Because petitioner pleaded guilty in open court, he may not now "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea[s]." Tollett, 411 U.S. at 267.  Therefore, petitioner's claims concerning the grand jury proceedings, the denial of his application to proceed pro se, his right to a speedy trial, and the statute of limitations are barred unless he successfully attacks "the voluntary and intelligent character of the guilty plea[s]." Id.; see Coffin, 76 F.3d at 497.

Petitioner challenges the validity of his guilty pleas, essentially arguing that he did not enter the subject guilty pleas and waivers of appeal voluntarily. See Docket Entry #4, Amended Petition at 8. He avers that the County Court judge, the prosecutor, and his defense counsel coerced him into pleading guilty by keeping him confined in perpetuity at the MHFPC as a legally incompetent defendant unless he entered such pleas and waived his rights to appeal. See id. Petitioner cites no evidence, in or outside of the record, to support such conclusory allegations. In opposition, the State argues that petitioner's claim is not properly exhausted, but it essentially asks the court to deem the claim exhausted and procedurally defaulted. Docket Entry #21, Attach. 1, Respondent's Mem. of Law at 12-13. Although petitioner's claim is unexhausted, the Court will deem it exhausted because petitioner is without available remedy in state court. However, petitioner's failure to adequately raise the claim on direct appeal or by collateral attack constitutes a procedural default, and, consequently, the claim should be dismissed. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

In addressing the exhaustion requirement of § 2254(b), "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Harris, 489 U.S. at 263 n. 9. In such a situation, the court may deem the claim exhausted because the petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

Here, petitioner has not "fairly presented," Picard, 404 U.S. at 275-76, his federal constitutional claim challenging the voluntariness of his guilty pleas on direct appeal or collateral attack in a manner sufficient to alert the state courts of its federal nature, and, consequently, the claim is unexhausted. See Daye, 696 F.2d at 192. Despite waiving his rights

17

to appeal, petitioner "retain[ed] the right to challenge the legality of the sentence or the voluntariness of the plea." People v. Seaberg, 74 NY2d 1, 10 (1989); People v. Hansen, 95 NY2d 227, 231 n. 2 (2000) ("A defendant may raise, after a guilty plea, certain constitutional claims such as the voluntariness of a plea").[3] In New York, even in the presence of a waiver of appeal, "an unfair bargain or one coerced to conceal error or misconduct . . . is subject to vacatur on direct appeal or by appropriate posttrial proceedings." Seaberg, 74 NY2d at 11. Petitioner relies on no evidence outside of the record to support his claim that the County Court judge, the prosecutor, and his attorney coerced him to plead guilty; thus, the charge could have been raised on direct appeal. Although petitioner filed a timely notice of appeal from the judgment, he never perfected such direct appeal to the Appellate Division of the Supreme Court, and, as discussed

---

[3] In some instances, a defendant, who has waived his right to appeal must first move in the trial court, pursuant to C.P.L. § 440.10, to vacate the judgment prior to challenging the voluntariness of a guilty plea on direct appeal. See People v. Lopez, 71 NY2d 662, 665-66 (1988); People v. Hilliard, 39 AD3d 1021, 1022 (3d Dept. 2007); People v. Peterson, 35 AD3d 1195, 1196 (4th Dept. 2006) ("Although the contention of defendant that his plea was not knowingly, voluntarily or intelligently entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve that contention for our review" (internal citations omitted)); People v. DeJesus, 248 AD2d 1023 (4th Dept. 1998). Such requirement ensures that "the trial court [has] the opportunity to address the perceived error and to take corrective measures, if needed." Lopez, 71 NY2d at 665-66. Upon the denial of the motion to vacate the judgment, the defendant may then raise the issue before the Appellate Division of the Supreme Court through (1) a direct appeal from the judgment of conviction, see C.P.L. § 450.10(1), or (2) a motion for leave to appeal to the Appellate Division from the order denying the motion to vacate a judgment of conviction. See C.P.L. § 450.15(1). However, where, at the time of the plea, the trial court is on notice of the dispute concerning its voluntariness but fails to sufficiently inquire as to the issue, the defendant need not move to vacate the judgment prior to a direct appeal because the trial court judge was already afforded a full opportunity to cure the alleged deficiency. Lopez, 71 NY2d at 666. Here, petitioner claims that the County Court judge coerced him to involuntarily plead guilty. Petitioner's claim that the County Court judge coerced him into pleading guilty against his will is based upon the knowledge and acts of that judge. Therefore, a motion, pursuant to C.P.L. § 440.10, to vacate the judgment on voluntariness grounds before that same judge would not have enlightened the judge with further information leading to a reconsideration of the voluntariness of the guilty pleas. Such a motion would have been fruitless and, thus, unnecessary to preserve the claim.

infra, any effort to now do so would be rejected as untimely. Further, petitioner has not brought

the claim before any New York court by means of a collateral attack on his conviction.

Although petitioner did move to vacate the judgment, pursuant to C.P.L. § 440.10, he did not

argue that his plea had been coerced; instead he argued that (1) he did not have full knowledge of

the consequences of his pleas, asserting that his attorney failed to apprise him of the likely

resulting immigration consequences; (2) the State produced no evidence of his guilt at trial; and

(3) his attorney failed to argue that he did not resist arrest. Affid. in Supp. of Mot to Vacate

Judgment. Petitioner also failed to appeal his conviction to New York's highest court. See

Klein, 667 F.2d at 282. Accordingly, his claim is unexhausted and therefore is not eligible for

federal habeas review.

New York procedural rules afford petitioner no remedies on his claim. According to the

rules of the Second Department of the Appellate Division, petitioner was required to perfect his

appeal within nine months of the filing of his notice of appeal, 22 NYCRR 670.8(f), which

petitioner had to have filed within thirty days of the imposition of the sentence. C.P.L.

§ 460.10(1)(a). The County Court judge sentenced petitioner on December 2, 2009, meaning

that his notice of appeal was filed not later than January 2, 2010. Therefore, the date by which

petitioner must have perfected his appeal was October 2, 2010, a date which has long since come

and gone. Consequently, any attempt to now perfect such appeal would be rejected as untimely.

State collateral review of the claim pursuant to C.P.L. § 440.10 is barred because petitioner

could have raised it (1) on direct appeal, see C.P.L. § 440.10(2)(c) (barring review of a claim

that could have been raised on direct appeal), or (2) in his previous motion to vacate the

judgment. See C.P.L. § 440.10(3)(c) (permitting dismissal of a claim that the defendant could

have but failed to raise in a previous motion made pursuant to C.P.L. § 440.10). Therefore,

petitioner's return to state court on the current claim would bear no fruit.  Because petitioner has

no "remedies available" in New York state courts, this Court will deem his claim exhausted for

purposes of presenting it in a federal habeas petition.  See Harris, 489 U.S. at 263 n. 9; Engle v.

Isaac, 456 U.S. 107, 129 (1982); See Grey, 933 F.2d at 120-21.

  New York has an "interest in the integrity of its rules and proceedings and the finality of

its judgments, an interest that would be undermined if the federal courts were too free to ignore

procedural forfeitures in state court."  Reed v. Ross, 468 U.S. 1, 10 (1984).  "Each State's

complement of procedural rules facilitates this complex process, channeling, to the extent

possible, the resolution of various types of questions to the stage of the judicial process at which

they can be resolved most fairly and efficiently."  Id. at 10.  "Failure to raise a claim on appeal

reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to

review trial error, and 'undercut[s] the State's ability to enforce its procedural rules.' "  Murray v.

Carrier, 477 U.S. 478, 491 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 129 (1982)).

Accordingly, petitioner's failure to raise his claim on direct appeal or collateral attack, although

he was able to do so, bars it from full state court review, thereby barring it from federal habeas

review.  See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (state court's dismissal of claim on

collateral attack pursuant to C.P.L. § 440.10(2)(c) constituted an adequate state procedural bar to

federal habeas review of the claim); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); Grey, 933

F.2d 120; Kimbrough v. Bradt, __ F.Supp.2d __, 2013 WL 2545379 (N.D.N.Y. 2013)

("Where a petitioner has failed to exhaust his federal claims, but the state court to which he must

present those claims would find them procedurally barred, a federal habeas court must deem the

claims to be exhausted and procedurally defaulted."); Pettigrew v. Bezio, 2012 WL 1714934

W.D.N.Y. 2012) (petitioner's habeas challenge to voluntariness of his guilty plea was

procedurally defaulted because he failed to raise the record-based claim on direct appeal, without justification, and a collateral attack would be dismissed for failure to raise the claim on direct appeal).

Further, petitioner makes no showing of cause and prejudice or actual innocence sufficient to excuse his procedural default of the claim. See Murray, 477 U.S. at 489-97.  In the section of the petition form labeled "Timeliness of Petition," petitioner stated: "I have no exhaustion remedy nor a time limit as the State Court of Appeal denied me these rights under the 4th, 6th, 8th, 13th, and 14th Amendments due process clause which invoke Federal Court Jurisdiction to hear my petition."  Docket Entry #4, Amended Petition at 9.  Such conclusory assertion is not sufficient to excuse his failure to properly raise his claim in state court.

Petitioner also argues that his sentences, which consisted of three and one-half years in prison and three years post-release supervision, were improper because they exceeded the terms promised by the County Court judge prior to entry of his guilty pleas.  See id.  Petitioner claims that the judge promised him three years imprisonment, with no term of post-release supervision, prior to the entry of his guilty pleas.  A challenge to the legality of a sentence survives a valid waiver of appeal, Callahan, 80 NY2d at 280-81, and, therefore, petitioner could have raised this claim on direct appeal but failed to do so.  Further, despite raising the subject claim in his motion, pursuant to C.P.L. § 440.20, to vacate his sentences, petitioner failed to properly move for leave to appeal from the County Court judge's order denying his motion to vacate the sentence.  Accordingly, the claims are unexhausted.  Any direct appeal from the judgment or motion for leave to appeal from the denial of petitioner's C.P.L. § 440.20 motion are procedurally barred as untimely, and, consequently, petitioner is without remedy in state court.  Therefore, the Court deems the claim exhausted and, like his challenge to the validity of his

guilty pleas, the claim is procedurally defaulted. See Clark, 510 F.3d at 393; Grey, 933 F.2d at 120. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that petitioner's claims are procedurally defaulted and should be dismissed.

## IV.   **CONCLUSION**

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the application for a writ of habeas corpus be denied and the petition be dismissed. As the petition presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Deborah A. Batts at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

22

Requests for extensions of time to file objections must be made to Judge Batts, and should not be made to the undersigned.

Dated: October 29, 2013
        White Plains, NY

                                        Respectfully submitted,

                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Deborah A. Batts, U.S.D.J.

Carpeah R. Nyenekor, Sr.
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

Andrew R. Kass
Orange County Attorney
255 Main Street, County Government Center
Goshen, NY 10924